May it please the court. Mark Davidson from Williams-Castner on behalf of the plaintiff and the appellant. With me at counsel table is David Shaw, who was counsel at trial for the plaintiff. The issue before the trial court and before this court is one of contract interpretation. Specifically, whether the liability for Ms. Clausen's asbestos exposure personal injury claim arose out of the operations of Ashland Technologies Foundry Business. That's the issue. The language is found in the party's contract at paragraph 3E1. Specifically, as part of the consideration for the transaction in which Atlas acquired assets of Ashland Technologies, the consideration included assumption by buyer of all claims and liabilities arising out of the operation of Sellers Foundry Business. Known or unknown, whether arising from acts, omissions, or occurrences occurring before or after the closing. That's the language. That's the language the trial court erroneously found to be ambiguous and admitted extrinsic evidence and beyond that, extrinsic evidence of subjective, unexpressed intent. But the principal reason that we're here today is because of the erroneous contractual interpretation which found this language to be ambiguous. What happened here? Can you counsel, focusing on ambiguity, just to clarify Washington law, you are suing as the plaintiff, obviously, to enforce the contract. Who has the burden of establishing ambiguity in the first instance? Well, I would argue that the party contending that the contractual language is ambiguous is the party with the burden of proving that it's ambiguous. We start with the premise that the parties agreed to this language and this is the contract. If somebody wants to come in and claim that the language is ambiguous, then the burden is on them to prove it. Essentially, what we're dealing with here is an issue of law. Is the language ambiguous? The court's going to look at that and this court is going to look at that de novo because it's a contract interpretation. Under Washington law, what's the standard? What does the person with the burden of showing ambiguity, what quantum of evidence, what standard do they have to meet? In order to kick it to the next step of extrinsic evidence, presumably, I'm most familiar with California law because that's where I practiced. But is the Washington law strict or easy on creating the notion of ambiguity so you get beyond the words of the contract and go into extrinsic evidence? There's two relevant points of Washington law. The first is in order for the language to be ambiguous, it has to be susceptible of more than one reasonable interpretation. That is the standard. Of course, we've contended this language is not and essentially that's where the inquiry should end. However, there's also Washington law which puts contractual terms in context. This was one of the problems that we found with the defendant's brief because they relied on a case called Bird v. Hudisman in which it appeared that the Washington Supreme Court had essentially gone off and said courts may always consider extrinsic evidence when they're interpreting a contract. But that case had been narrowed because of the erroneous broad interpretation that some lower courts had given it. And essentially what we came back to is the rule that while the court is required to look at the context in which the contract was entered, nevertheless, the language may not be modified or altered by extrinsic evidence. And there's a case that the Washington Supreme Court decided that's Hollis v. Garwell, 974p2 836. Extrinsic evidence does not include evidence that would vary, contradict, or modify the written word. That holding has been followed 49 times since it was handed down by the Washington Supreme Court. And essentially what this case is about is that paragraph 3.2, the immediately following paragraph of this provision in the contract. Okay, can I take you back? Yes. Because I'm looking at page 35 of your brief, which you're quoting from. You start the paragraph off citing to Hollis, however, saying, Extrinsic evidence may, however, be relevant in discerning the party's intent, where the evidence gives meaning to words used in the contract. And so when you're addressing the district court's findings of ambiguity, it would be helpful if you could pitch your argument to explaining how did the court go beyond giving meaning to the words used in the contract and tip into an uncommunicated subjective intent or that would totally contradict the plain obvious meaning of the words. I think the answer to your question, Your Honor, is the court went off on finding whether or not the long foundry in Hoquiam, Washington, was one of the assets that was acquired under the terms of this agreement. That was not the question. The assets were acquired in return for consideration. How could that not be the question, counsel? You have to put in context the provision that you're talking about in the contract. Does all mean all? All of what? What was being sold? Didn't the court have to answer that question? I don't think it did, Your Honor, because the question was the consideration here for what was sold. So we have contended that the long foundry was sold, but that we don't believe is the determinative issue. Because whatever the assets that were acquired, the real question is what was the consideration for those assets? Well, counsel, I mean, you're trying to enforce a liability that was acquired. They took assets and liabilities. So as Judge Christian says, it's a little unclear why you're saying it wasn't relevant. But go ahead. Well, I think the issue is did they acquire the liabilities? The answer is the language is that they assumed the liabilities. Now, maybe that's a distinction without a difference. Well, it's the liabilities of what long or the liabilities of Ashland? The liabilities of Ashland Technologies. And the focus is on the liabilities arising out of the operation of the foundry business. The focus here is this claim arose out of the operation of the business. Whether or not the long foundry was part of that business on the date that this purchase and sale agreement was sold, is not the issue. Did this liability arise from the operations when it was operational? And that's not disputed. In fact, the trial court specifically found that Ashland Technology operated the long foundry during the years that this liability arose. There's specific testimony from Tom Long that in 1983 and in the years before, two to five percent of the Ashland Technology revenues in the foundry business arose from this particular foundry. So the focus is did this liability arise out of those operations? The question is not was it operating at the date of the sale? The question is not was long foundry acquired? The question is was this an assumed liability? Was it a liability arising out of the operations of that foundry, particularly when the language goes on to say before or after the closing. That is the key language and that is what the court's focus should have been on, rather than on whether the long foundry itself was part of the assets acquired. We think that the court did not address the determinative issue and because in part it was the defendant who invited the error by indicating that the foundational question had to do with whether or not the long foundry was acquired. The court's five reasons as to why it found the contract ambiguous all went to that issue, all went to the issue of whether the long foundry was acquired. And from the perspective of the parties' agreement, that's the wrong inquiry and that's why reversal is required. This court should look at the provision, interpret the provision de novo and find given the undisputed evidence as to how this liability arose and when it arose and that it arose from the operations of the long foundry. That's where this court's inquiry must end and that's where the trial court's inquiry should have ended, but it did not. So just so I can understand your position then, when the transaction was being put together and Ashland was drafting this agreement, it was including in its foundry business the general term, all the assets and liabilities of the foundry business, even if long foundry was not operational at the time and that the buyer, the longs, would have understood from this contract that they were acquiring liabilities from a defunct foundry operation that had been operated in the past. I would say yes with one exception. It was not Ashland that drafted the contract. There were counsel on both sides and so it was mutually drafted. But I will say, Your Honor, it's correct in this sense. The language here, did the liability arise from the operations of technology's business? They had to know and they did know because they testified that they knew that the long foundry had been part of Ashland Technology's business when it was operating and because this is a liability that arose out of those operations, this language is not ambiguous and this was an assumed liability. And was that argument clearly put to the district court? It was, Your Honor, and the court, I believe, focused instead on the issue of what assets were acquired and because if you look at the decision in the file… Where was it expressed to the district court? Well, for one thing, it was… The motion papers, the complaint, where was it during some kind of argument? Well, I think the citation to the language of 3.1.E, which was the focus of the arguments… But you're clarifying here to us what you say the defendants led the district court astray on. So the question is where did Ashland put before the district court the very characterization of the contract that you're now offering us? Well, Your Honor, it was in the documents themselves. Both the purchasing settlement… I'm asking where the argument was put. Those are long documents and whatever.  There's a lot of evidence. Where was the district court focused on the notion, as I summed up and you said yes to, is that it was clear to everyone from the outset that the Longs were acquiring assets and liabilities that predated the negotiations that had accrued or could have… liabilities that could have accrued. That's what was at issue, not whether it was operational at the time or not. Where was that argument put before the district court? Well, it was certainly cited in closing argument and I think it was also from the questioning of the witnesses when the Long brothers testified and when Mr. Snyder testified. So if we read the transcript of the closing, we're going to hear the same argument you're making today? Well, maybe not in quite the same words, but yes, the focus in that argument was, was this an assumed liability? Was the closing liability… Generally, that's what the whole case is about. But the argument that I hear you making today strikes me as quite different than what I understood plaintiffs were arguing to the trial court and I think that's what Judge Fischer is trying to get at. So hence my question. You're almost out of time, so I really want to be fair to you and make sure you have an opportunity to answer it. I will say this. There was a motion made essentially to exclude the extrinsic evidence and to rely exclusively on the language of the contract. And I think that's one place, certainly, that the record reflects that the argument was made and the court should not go beyond the language of this paragraph because it was not ambiguous. Okay, so now you're… not to put too fine a point on it, but when you say argument, should we read the papers from that motion or are you telling me that there's going to be an oral argument that was held before the district court where I will glean this argument? Certainly, in the trial testimony itself, there was a motion made to the court to exclude extrinsic evidence because the language of the contract was not ambiguous, specifically this provision. And it goes to this operational issue that you're raising today? I believe it does because that's the focus, yes, operations. Thank you. Okay, thank you, Mr. Davidson. Your time is down to 10 seconds, but we'll give you a minute for rebuttal if you want to ponder. Okay, now for appellee, is this Mr. Selby? Yes, Your Honor. Yes. May it please the court, my name is Clay Selby and I represent co-appellee Leo Long, Jr. Mr. Long is present in the courtroom today. Also present at council table is Michael Ricketts. Mr. Ricketts is counsel for co-appellee and co-appellant for that matter, Thomas Long, Mr. Leo Long's brother. As this court is well aware, we are here on two appeals actually, both the appeal on the substantive underlying matter as well as the Long brothers' appeal relating to the court's denial of motion for attorney's fees and costs. Your Honor, I will be presenting argument for the Long brothers this morning. In this case, the court has honed in right on the key issue, and that is what was the ambiguity, how was there an ambiguity determined and what was it as to? Ashland asked this court to travel back in time nearly 30 years and to rewrite the purchase and sale agreement to add a term that would provide Atlas Foundry and Machine Company and the Long brothers as guarantors to assume liabilities and assets of a defunct and separate Long Foundry. Could I ask you in your argument to address what seemed to be a big deal for the district court was that the only reference to Long came by virtue of references to the lease involving, what was it, Enterprise? Correct, Your Honor. Why would there be any reference to that lease in the transaction documents if the Longs didn't think that they were getting whatever was represented by the Long Foundry when the whole purpose of the agreement from its inception, as I understand it, was that Ashland wanted to get rid of its foundry business and the only thing Long was was either an operating foundry or a defunct operation. And the district court seemed to take a lot of guidance on interpreting the language to read the Long Foundry out by saying, well, they only mentioned the lease. My question, so I hope you can address it in your argument, is why would they refer to the lease at all if Long was irrelevant? Your Honor, the lease is referred to in two places in the purchase and sale agreement as this Court's aware, Exhibit H and Exhibit I. As the district court found, the lease was included in the purchase and sale agreement solely for the purpose of terminating it. That's from extrinsic evidence. Correct, Your Honor. Before you get to extrinsic evidence, as I understand Washington law, you have to find an ambiguity. And when the court, as a matter of law, is finding that threshold step and says, well, you only mentioned Long once or twice in those two exhibits, my question, I will repeat, if the ambiguity is whether Long Foundry was at all relevant to this, why would the documents refer to anything about Long if it wasn't relevant to the acquisition or the divestiture by Ashland? Your Honor, to best answer your question, I have to go back to the issue of Washington law regarding ambiguity and contract interpretation. And if I may, and I will try to get to that answer, Washington law under the Berg v. Hudisman case that Mr. Davidson cited provides that the court should look to all evidence of the circumstances of the making of the contract, including extrinsic evidence, in determining as a threshold matter whether a term is in fact ambiguous. So, counsel, are you relying on Restatement Section 214? I'm relying on Restatement Section 212 and as well as 214C, Your Honor. 214C. Agreements and negotiations prior to or contemporaneous with the adoption of a writing are admissible to establish the meaning of the writing, whether or not integrated. That's what you're relying on, right? That's correct, Your Honor. Was that adopted in the Berg case? It was, Your Honor. Thank you. And the Berg case, Your Honors, as well has been interpreted by the Ninth Circuit in the DP Aviation case that we've cited extensively in our briefing. So does that get you there? I know I keep interrupting you. Forgive me. I keep trying to look for an opening, but I think I'm interrupting, so forgive me. Going back to Judge Fischer's point, does that get you to where you need to be? There's this very, seems to be, the first time you read it, it seems quite unambiguous. All means all in terms of what is being assumed by way of liabilities. But there are these references to the lease. Is that how you get in the door? What do the parties mean by the lease? Why is the lease mentioned? Exactly. Your Honor, at trial, the district court considered and the parties argued, what was the meaning of foundry business? Foundry business, as it's stated in the purchase and sale agreement, that's a term that was never used between the parties or by Ashland prior to the entry of this purchase and sale agreement. That's what the extrinsic evidence demonstrated. That evidence was admissible under the restatement and under the Berg case because it goes to show the circumstances, the prior history, and course of dealing among the parties. All of that evidence is properly admitted under Washington contract interpretation law. So the court could consider all of that. In doing so, it considered not only documentary evidence but testimonial evidence. The court made credibility findings regarding the testimony of Leo Long, Terry Snyder, who was Ashland's vice president of finance, as well as Thomas Long. The court determined all of those witnesses to be highly credible and to have very strong memories of this transaction and of the circumstances surrounding the negotiation and the transaction. Conversely, the court found that Ashland's key witness, that being Mr. Voss, had a very limited memory. The court weighed all of that and made that determination regarding, A, whether the contract was ambiguous in terms of its meaning of foundry business, and then, B, what the parties truly intended based on extrinsic evidence by looking at that testimonial evidence as well as the documentary evidence. So to get back to Judge Fisher's question regarding the lease, the leases were included because, as I stated earlier, as the district court found, they were included in the purchase and sale agreement only for the purpose of providing for their termination. The court found that, based on extrinsic evidence, that included first and foremost that the Long Foundry was defunct and had been closed for 15 months prior to the entry of this purchase and sale agreement. The evidence was rife with examples of documents that were prepared by or for Ashland pursuant to negotiations. That included the prospectus document by First Boston, the appraisals that were prepared both internally and externally for Ashland, financial lending and bond documents prepared by Atlas and the Long Brothers in order to facilitate this agreement, et cetera, that all focused in exclusively on the Atlas foundry in Tacoma, never once mentioning the defunct Long Foundry. Counsel, just if I could clarify a point. Yes. So is it your position that under Berg all that evidence can properly come in before there's a finding of ambiguity, that it can come in in order to assess whether there is or is not an ambiguity? Your Honor, my position is, the position of the Long Brothers, is that the extrinsic evidence is properly considered by the district court to determine as a threshold matter whether there is in fact an ambiguity. Okay. And then how do you deal with the case argued by Mr. Davidson where he argued that in the Hollis case, the Supreme Court of Washington narrowed or refined Berg? I would disagree with the characterization of the Hollis case as narrowing Berg, Your Honor. I think what the Hollis case and the other cases cited by Ashland in its briefing and argument, rather than narrowing the scope of Berg, what they did is they clarified. Berg and its progeny have long said that extrinsic evidence is admissible to determine ambiguity and to determine the intent of an ambiguous term in a contract revision. However, extrinsic evidence may not be used to vary or alter or add to the terms of an existing contract. And there's a fine line there between what is used to interpret the meaning as opposed to what is used to alter or change the meaning. In this matter, the district court determined that the evidence it heard from the Long Brothers, both documentary and testimonial evidence, assisted in interpreting the meaning of foundry business. Because foundry business, as I previously stated, was not a defined term. It was not a term of art that Ashland had used historically. We know that because Leo Long testified to that. We also know that because Ashland never produced a single document in this trial that ever referred to Atlas Foundry's division or the foundry business other than the purchase and sale agreement and the letter of intent that predated it by a month. Historically, those terms were never used by these parties. So when it came time to negotiation and to entry of execution of the agreement itself, that term was ambiguous. That's what the district court found based on all of those things. So to go back to your question as to whether the Hollis case changes, no, it does not. It simply clarifies. And what this district court did is said, in looking at all of this evidence, it is not attempting to alter or add to the purchase and sale agreement. It is used to properly interpret the meaning of foundry business. And in considering all of that evidence, the district court determined that foundry business was intended to mean the Atlas Foundry in Tacoma, Washington, as well as Ideal Machine Company in Tacoma, not the defunct Long Foundry. Counsel, I just want to follow on the point that we've been trying to hone in on as to the argument then made that the Longs understood that they were acquiring the past or operational currently. Counsel says that that argument was presented. Do you disagree with that? I believe the argument was presented, Your Honor. I think that the court considered it and determined that it failed. Where was it presented? Your Honor, I was thinking about that as you were asking during Mr. Davidson's argument. At best, it was presented, as Mr. Davidson suggested in the motion, to exclude extrinsic evidence and perhaps slightly in Mr. Shaw's closing argument. Thank you. And ultimately, the court made its determination of ambiguity and ultimately of what the party's intent was based on the admissible and credible evidence. Notably, part of the court's determination was based on the fact that Ashland provided no credible evidence of its own. Mr. Voss had a faulty memory. Mr. Rines had no firsthand personal knowledge. The other witnesses offered essentially nothing of substance. The court contrasted that with the testimony that was put forward by Leo Long, Thomas Long, and most importantly, Terry Snyder. Terry Snyder was Ashland's employee. Mr. Snyder testified about the circumstances leading up to the sale, including the sale. Counsel, I think we have all that in the briefs. I'm nervous about your getting to the attorney fee part of your appeal. Thank you, Your Honor. I will shift gears to the attorney's fees. Your Honors, the Long brothers are also asking this court to reverse the district court's determination, denial of its motion for attorney's fees and costs. The briefing is fairly succinct and on point. The issue arises under Sections 15.1 and 15.6 of the Purchase and Sale Agreement. Ultimately, the district court denied the Long brothers' motion for attorney's fees and costs, finding that there is no specific reference to attorney's fees. The Long brothers' position is that the court misinterpreted those contract provisions because they must necessarily be read together. Under Washington law, the contracts need to be interpreted in a manner that gives effect to all expressed terms when possible, and that will be preferred over a contrary interpretation. In this instance, if the court looks at Section 15.6, it specifically refers to 15.1 and suggests by a plain reading of 15.6 that 15.1's reference of all expenses necessarily includes attorney costs, as they call it, in other words, attorney's fees. Ashland responds by pointing to other sections in Section 15, that being 15.5, 15.7, and 15.8. Actually, Your Honors, I would suggest that those sections actually are supportive of the Long brothers' position. In each of those three paragraphs, they are referring to indemnity and hold harmless provisions, whereby one party will indemnify and hold the other harmless for certain things, the last of which is expenses including attorney's fees. Therefore, implicitly, they are including attorney's fees as expenses. Thank you. Thank you, counsel. Rebuttal argument. The trial court in its decision at ER 6 said this, Ashland Technology had operated both foundries, speaking of Tacoma and Hoquiam, apparently under one corporate entity. There's no question that Ashland Technology operated the Long Foundry. There's no question that this liability arose out of those operations, and there is no question under the terms of the purchase and sale agreement that all liabilities arising from the operation of its business, of the technology boundary business, were assumed. What's happened here is that the defendants are attempting, and the trial court agreed to create a third exception under 3.2. Expressly, there's only two exceptions for a particular named lawsuit and tax liability. Those are the exceptions of the liabilities that were assumed. But the district court created a third exception in violation of Washington law, which prohibits the use of extrinsic evidence to modify the agreement of the parties. And that's what the error was here. I'll rely on the briefs with respect to the argument on attorneys' fees. Thank you. Thank you, Mr. Davis. We appreciate the excellent arguments on both sides, and the Ashland v. Long shall be submitted. Thank you both.
judges: Fisher, Gould, Christen